CERTIFIED MAIL

US POSTAGE >> PITNEY BOWES

ZIP 25305   $ 006.65⁰
02 4W
0000336763 JUL 06 2020

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**USPS CERTIFIED MAIL™**



9214 8901 1251 3410 0002 7289 50

CINCINNATI INSURANCE COMPANY
STEVE CORBLY
6200 SOUTH GILMORE ROAD
FAIRFIELD, OH 45014

**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

| | |
|---|---|
| **Control Number:** 259245 | **Agent:** STEVE CORBLY |
| **Defendant:** CINCINNATI INSURANCE COMPANY 6200 SOUTH GILMORE ROAD FAIRFIELD, OH 45014 US | **County:** Monongalia |
| | **Civil Action:** 20-C-185 |
| | **Certified Number:** 92148901125134100002728950 |
| | **Service Date:** 7/2/2020 |

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of your unauthorized foreign corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in the name and on behalf of your unauthorized foreign corporation as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State



# SUMMONS

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**ADAM JOEL MYERS DDS PLLC**
**DBA PINEVIEW DENTAL CARE**
**AND ADAM JOEL MYERS**

**PLAINTIFF(S),**

VS.                                    **CIVIL ACTION NO.  20-C-185**

**CINCINNATI INSURANCE COMPANY**
**c/o Steve Corbly**
**6200 South Gilmore Road**
**Fairfield OH  45014**

**DEFENDANT(S).**

To the above-name Defendants:

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve **SCOTT S. BLASS**

whose address is **1358 National Road, Wheeling, WV  26003** an answer including any related counterclaim you

may have to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered

to you.  You are required to serve your answer within **30** days after service of this summons upon you, exclusive of

the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint and you will be thereafter barred from asserting in another action any claim you may have which must be

asserted by counterclaim in the above-styled action.

DATED: **June 29, 2020**

JEAN FRIEND, CLERK
MONONGALIA CO. CIRCUIT COURT

BY
DEPUTY CLERK

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

ADAM JOEL MYERS, DDS, PLLC
d/b/a PINEVIEW DENTAL CARE,
and ADAM JOEL MYERS,

                Plaintiffs,                Civil Action No. 20-C-185

v.                                  Judge _____

CINCINNATI INSURANCE COMPANY,

                Defendant.

## **COMPLAINT**

NOW COME the Plaintiffs, Adam Joel Myers DDS PLLC d/b/a Pineview Dental Care and Adam Joel Myers, who for their Complaint against Defendant, Cincinnati Insurance Company, state as follows:

1.      The Plaintiff, Adam Joel Myers DDS PLLC d/b/a Pineview Dental Care (hereinafter "Pineview Dental Care"), is a West Virginia professional limited liability company with its principal place of business located at 1189 Pineview Drive Suite A, Morgantown, West Virginia 26505-2780.

2.      The Plaintiff, Adam Joel Myers, is and has been at all times relevant herein, a resident of Morgantown, Monongalia County, West Virginia. Adam Joel Myers is a licensed dental professional and the owner of Plaintiff, Adam Joel Myers, DDS, PLLC d/b/a Pineview Dental Care (hereinafter collectively as "Plaintiffs").

3.      The Defendant, Cincinnati Insurance Company (hereinafter "Cincinnati Insurance"), is an Ohio corporation with its primary place of business located at 6200



**BORDAS AND BORDAS**
ATTORNEYS, PLLC

1358 National Road
Wheeling, WV 26003
t 304-242-8410
f 304-242-3936

106 East Main Street
St. Clairsville, OH 43950
t 740-695-8141
f 740-695-6999

526 7th Street
Moundsville, WV 26041
t 304-845-5600
f 304-845-5604

One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1800
Pittsburgh, PA 15222
t 412-502-5000
f 412-709-6343

bordaslaw.com

S. Gilmore Road, Fairfield, Ohio 45014-5141. Cincinnati Insurance is authorized to and does, in fact, issue policies of insurance in West Virginia.

4.      On or about March 16, 2020, in response to the global coronavirus pandemic (hereinafter "COVID-19"), the Governor of the State of West Virginia, Jim Justice, declared that a State of Emergency existed in the State of West Virginia, including Monongalia County, West Virginia.

5.      On or about March 16, 2020, the American Dental Association acknowledging "the unprecedented and extraordinary circumstances dentists and all health care professionals face related to the growing concern about COVID-19" recommended that "dentists nationwide postpone elective procedures for the next three weeks."

6.      On or about March 23, 2020, Governor Jim Justice issued Executive Order No. 9-20 declaring that in order "[t]o preserve public health and safety, and to ensure the healthcare system in West Virginia is capable of serving all citizens in need, especially those at high risk and vulnerable to COVID-19, all individuals within the State of West Virginia are under a general stay-at-home order and are directed to stay at home or their place of residence unless performing an essential activity."

7.      On or about March 26, 2020, the State of West Virginia Department of Health and Human Resources provided directives to healthcare services, including dental care, which directed "all non-emergent, non-urgent in-person medical, surgical, dental, and any other health care practice or procedure must have immediately ceased effective at 8 p.m. March 24, 2020."

2

8.     On or about March 31, 2020, Governor Jim Justice issued Executive Order No. 16-20 declaring that effective on April 1, 2020, "all elective medical procedures are hereby prohibited," including "medical procedures that are not immediately medically necessary to preserve the patient's life or long-term health, except that procedures that cannot be postponed without compromising the patient's long term health, procedures that cannot be performed consistent with other law at a later date, or procedures that are religiously mandated shall not be considered 'elective' under this Order."

9.     Due to the risks associated with COVID-19 and/or due to Governor Jim Justice's March 31, 2020 Executive Order, Plaintiffs were forced to shut down their business, were precluded access to the business premises and were forbidden from performing dental services.

10.     As a result of COVID-19 and/or Governor Jim Justice's March 31, 2020 Executive Order, Plaintiffs experienced a substantial loss of business income and incurred extra expenses that they would not have otherwise incurred.

11.     When COVID-19 was rapidly spreading throughout the United States, including West Virginia, and when Governor Jim Justice signed his March 31, 2020 Executive Order, Plaintiffs were insured through a Cincinnati Insurance policy bearing Policy No. ECP 025 60 06, with effective dates of July 1, 2017 through July 1, 2020 (hereinafter "Policy"). The Policy is not attached to this Complaint inasmuch as it is already in the possession of Cincinnati Insurance.

12.     The Policy issued to Plaintiffs is an all perils policy, meaning that all risks of loss are covered by the Policy, unless specifically excluded.

3

13.    All premiums due and owing on the Policy were timely paid and the Policy was in full force and effect at the time Plaintiffs were forced to shut down their business and were prohibited access to their business premises and were forbidden from performing dental services.

14.    The Policy issued to Plaintiffs by Cincinnati Insurance provided that Cincinnati Insurance "will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss."

15.    The Policy issued to Plaintiffs defined "premises" as "the Locations and Buildings described in the Declarations."

16.    The Policy issued to Plaintiffs defined "Covered Cause of Loss" as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part."

17.    The Policy issued to Plaintiffs defined the term "loss" as "accidental physical loss or accidental physical damage."

18.    The Policy issued to Plaintiffs does not define the phrase "accidental physical loss or accidental physical damage."

19.    The use of the word "or" in the definition of the term "loss" indicates that coverage is available if either an "accidental physical loss" or "accidental physical damage" is experienced with respect to the Covered Property.

20.    In order to protect themselves from unexpected and unavoidable financial losses that could result from catastrophic events, Plaintiffs paid Cincinnati Insurance additional premiums in return for Business Income and Extra Expense coverage (also known as "business interruption insurance").

4

21.    The Business Income and Extra Expense coverage purchased by the Plaintiffs included coverage "for the actual loss of 'Business Income' you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct 'loss' to property at 'premises' which are described in the Declarations and for which a 'Business Income' Limit of Insurance is shown in the Declarations. The 'loss' must be caused by or result from a Covered Cause of Loss."

22.    The Policy issued to Plaintiffs defined "Business Income" as "a. Net income (net profit or loss before income taxes) that would have been earned or incurred; and b. Continuing normal operating expenses sustained, including payroll."

23.    The Policy issued to Plaintiffs defined "suspension" as "a. The slowdown or cessation of your business activities; and b. That a part or all of the 'premises' is rendered untenantable."

24.    The Policy issued to Plaintiffs defined "operations" as "a. Your business activities occurring at the 'premises'; and b. The tenantability of the 'premises', if coverage for 'Business Income' including 'Rental Value' or 'Rental Value' applies."

25.    The Policy issued to Plaintiffs defined "period of restoration" as "the period of time that: a. Begins at the time of direct 'loss'. b. Ends on the earlier of: (1) The date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location."

26.   The "premises" described in the Commercial Property Coverage Declarations for which a "Business Income" Limit of Insurance is shown is 1189 Pineview Drive Suite A, Morgantown, West Virginia 26505-2780.

27.   The coverage included in the Commercial Property Coverage Part Declarations is "Business Income W/ Extra Expense (a)" with limits of "12 Months ALS (Actual Loss Sustained)."

28.   Under the Policy's Business Income and Extra Expense coverage provision, the Policy also provided for Extra Expense coverage, which stated, in part, "Extra Expense coverage is provided at the 'premises' described in the Declarations only if the Declarations show that 'Business Income' coverage applies at that 'premises'."

29.   Plaintiffs suffered "accidental physical loss" of their Covered Property inasmuch as Plaintiffs were prohibited access to their "premises" and were precluded and/or suspended from performing their business "operations", namely from performing elective dental procedures.

30.   Plaintiffs suffered "accidental physical loss" of their Covered Property inasmuch as COVID-19 prevented the Plaintiffs from accessing their property.

31.   As there was no virus exclusion or limitation applicable to Plaintiffs' Policy issued by Cincinnati Insurance, COVID-19 is a Covered Cause of Loss under the Policy.

32.   The Policy also provided civil authority coverage for lost business income and necessary extra expenses incurred as a result of an action of a civil authority that prohibited access to the "premises" given that both of the following conditions applied: "access to the area immediately surrounding the damaged property is prohibited by civil

6

authority as a result of the damage;" and "the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

33.     The civil authority coverage provision in the Policy issued to Plaintiffs is an independent basis for the extension coverage to compensate Plaintiffs.

34.     An action of a civil authority, namely Governor Jim Justice's March 31, 2020 Executive Order, required Plaintiffs to shut down their business operations, prohibited access to their premises, and precluded Plaintiffs from operating their business.

35.     Plaintiffs presented timely claims for coverage under the Policy for the direct "loss" Plaintiffs sustained from COVID-19 and/or Governor Jim Justice's March 31, 2020 Executive Order.

36.     On or about April 21, 2020, Plaintiffs received a letter from Cincinnati Insurance indicating that no coverage was available for Plaintiffs' claims and that Cincinnati Insurance would not be extending coverage to Plaintiffs for any lost business income and extra expenses.

37.     As a result of Cincinnati Insurance's refusal to pay Plaintiffs' claims, Plaintiffs were compelled to hire counsel to represent and protect their interests.

38.     On May 23, 2020, undersigned counsel emailed Cincinnati Insurance and informed it that if Cincinnati Insurance would tender the civil authority coverage benefit

7

limit available under the Policy, the Plaintiffs would waive any further claims and the Plaintiffs would not incur any attorney fees.

39.     By letter dated May 27, 2020, Cincinnati Insurance refused to pay any benefits to the Plaintiffs.

40.     At all relevant times, Plaintiffs were insured through Cincinnati Insurance Policy bearing Policy No. ECP 025 60 06, and all premiums due and owing on the Policy were paid as of the date Plaintiffs were forced to shut down its business operations, were prohibited access to the premises and were forbidden from performing dental services.

41.     The business income and extra expense coverage included in Cincinnati Insurance Policy No. ECP 025 60 06 also provided Plaintiffs with coverage for lost business income and expenses incurred as a result of the action of a civil authority. Plaintiffs had an objectively reasonable expectation for lost business income and extra expenses coverage benefits and/or coverage benefits resulting from an action of civil authority, Governor Jim Justice's March 31, 2020 Executive Order.

42.     Plaintiffs presented a timely claim to Cincinnati Insurance under Policy No. EPC 025 60 06 for the lost business income and extra expense coverage benefits and/or civil authority coverage benefits, and they have complied with all of the requirements and provisions set forth therein.

43.     Plaintiffs are entitled under Policy No. ECP 025 60 06 to recover benefits due and owing under the lost business income and extra expenses coverage and/or

8

coverage for an action of civil authority, Governor Jim Justice's March 31, 2020 Executive Order.

44.     Cincinnati Insurance has refused to pay any of the benefits due and owing under Policy No. ECP 025 60 06 for Plaintiffs' lost business income and extra expenses.

45.     The failure to pay the benefits due and owing under Policy No. ECP 025 60 06 for Plaintiffs' coverage benefits constitutes a breach of contract for which Cincinnati Insurance is liable, together with interest, costs and attorneys' fees.

46.     As a direct and proximate result of the failure of Cincinnati Insurance to pay policy benefits due and owing to Plaintiffs, Plaintiffs were compelled to hire counsel, file suit, and have incurred, and will continue to incur attorneys' fees, costs and expenses.

47.     The acts and omissions of Cincinnati Insurance, by and through its agents, representatives and employees, in the handling of the claims for business income and extra expense coverage benefits and/or coverage benefits resulting from an action of civil authority caused Plaintiff, Adam Joel Myers, to experience severe emotional distress, mental anguish, inconvenience, annoyance, humiliation, embarrassment, aggravation, fear, worry, concern, anxiety and other general damages, some of which are reasonably certain to continue into the future.

WHEREFORE, Plaintiffs, Adam Joel Myers DDS PLLC d/b/a Pineview Dental Care and Adam Joel Myers, seek judgment against Defendant, Cincinnati Insurance Company, for all benefits they are contractually entitled to recover pursuant to Cincinnati Insurance Company Policy, Policy No. ECP 025 60 06, and for compensatory and general

9

damages, in an amount within the jurisdiction of this Court to be determined by a jury, for pre-judgment and post-judgment interest, attorney fees and costs expended in this action, for any other specific or general relief as may become apparent as this matter progresses, and such other relief as this Court deems proper.

## A TRIAL BY JURY IS DEMANDED ON ALL ISSUES.

ADAM JOEL MYERS, DDS, PLLC d/b/a
PINEVIEW DENTAL CARE, and
ADAM JOEL MYERS, Plaintiffs

By:_____

SCOTT S. BLASS (#4628)
JUSTIN J. SELEP (#13771)
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
Telephone: 304-242-8410
SBlass@BordasLaw.com
JSelep@BordasLaw.com
*Counsel for Plaintiffs*

10