# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

_____

ADAM JOEL MYERS DDS, PLLC           :
DBA PINEVIEW DENTAL CARE AND        :
ADAM JOEL MYERS                     :   Civil Action No.  1:20-cv-00148 TSK
                                    :
    Plaintiffs,                    :
                                    :
v.                                  :
                                    :
CINCINNATI INSURANCE COMPANY        :
                                    :
    Defendant.                     :
                                    :
                                    :
                                    :
_____

## MEMORANDUM OF LAW IN SUPPORT OF THE CINCINNATI INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to Fed.R.Civ.P. 12(b)(6) and L.R. 7.02, Defendant, The Cincinnati Insurance Company ("Cincinnati") moves to dismiss this case because the Plaintiffs fail to state a claim upon which relief may be granted. Based on the allegations of the Complaint and the plain language of Cincinnati's insurance policy ("the Policy"), Plaintiffs cannot prove their claims.

## OVERVIEW AND SUMMARY OF ARGUMENT

The Policy at issue supplies property insurance coverage. It operates to indemnify loss or damage to property, such as in the case of a fire or storm. Coronavirus (or "COVID-19") does not damage property; it hurts people. Plaintiffs demand the Policy's Business Income, Extended Business Income, Extra Expense, and Civil Authority coverages. But, because they are part of a property insurance policy, these coverages protect Plaintiffs only for income losses tied to physical damage to property, not for economic loss caused by governmental or other efforts to protect the

public from disease. Plaintiffs' allegations establish that Plaintiffs have not sustained any losses attributable to direct physical loss to property. Moreover, the same direct physical loss requirement applies to all of the coverages for which Plaintiffs sue—including the Civil Authority coverage.

At bottom, Plaintiffs bear the initial burden of showing actual direct physical loss to property. This is always necessary to make a *prima facie* case for property insurance coverage. Yet, Plaintiffs' allegations establish that it has not sustained any direct physical loss. Rather, Plaintiffs ask this Court to find the Policy applies to cover purely financial losses sustained as a result of COVID-19-related Orders requiring non-essential businesses to cease in-person operations. But, because direct physical loss is a fundamental prerequisite to coverage under the Policy, they ask for a vast extension of West Virginia law that would create coverage from whole cloth. This should not be permitted.

For all of the reasons, and for the other reasons established below, Plaintiffs' Complaint should be dismissed.

## STATEMENT OF FACTS

### I. Allegations of the Complaint

The Complaint includes the following allegations:

- In response to the Governor's March 31, 2020 Executive Order, and/or due to the COVID-19 public health emergency, Plaintiffs were forced to temporarily close their dental office, were precluded access to the business premises and forbidden from performing dental services. (Compl. at ¶ 9).

- As a result of the Governor's March 31, 2020 Executive Order, Plaintiffs experienced a substantial loss of business income and incurred extra expenses. (Compl. at ¶ 10).

- Plaintiffs' contract of insurance with Defendant bears Policy Number ECP0256006 (the "Policy") and is effective for the period of July 1, 2017 to July 1, 2020 (the "Policy Term"). (Compl. at ¶ 11).

- The Policy provides coverage for "direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." (Compl. at ¶ 14).

- The Policy defines "Covered Cause Loss" as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part'". (Compl. at ¶ 16).

- The Policy defines "loss" as "accidental physical loss or accidental physical damage". (Compl. at ¶ 17).

- The Policy does not define the phrase "accidental physical loss or accidental physical damage." (Compl. at ¶ 18).

- The use of the disjunctive "or" in the phrase "accidental physical loss or accidental physical damage" means that coverage is triggered if <u>either</u> an "accidental physical loss" or "accidental physical damage" is experienced with respect to Covered Property. (Compl. at ¶ 19).

- Plaintiffs purchased coverage "for the actual loss of 'Business Income' … due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The ' suspension must be caused by a direct 'loss' to property at 'premises' which are described in the Declarations and for which a 'Business Income' Limit of Insurance is shown in the Declarations. The 'loss' must be caused by or result from a Covered Cause of Loss." (Compl. at ¶ 21).

- Plaintiffs claim to have suffered "accidental physical loss" of their Covered Property since they were prohibited access to their 'premises' and "were precluded and/or suspended from performing their business 'operations', namely from performing elective dental procedures". (Compl. at ¶ 29).

- Plaintiffs claim to have suffered "accidental physical loss" of their "Covered Property" because COVID-19 prevented them from accessing their property. (Compl. at ¶ 30).

- Additional coverage is provided under the Policy for business income losses resulting from an "action of civil authority" which prohibits access to the Covered Property, related to a "Covered Cause of Loss" at property other than the Covered Property. (Compl. at ¶ 32).

- Governor Jim Justice's March 31, 2020 Executive Order was an action of civil authority that required Plaintiffs to cease operations, prohibited access to their premises and precluded them from operating their business. (Compl. at ¶ 34).

The Complaint appears to set forth only one count of Breach of Contract and seeks judgment against Cincinnati for benefits Plaintiffs claim are due and owing. (Compl. at ¶ 45).

## II.    The Plaintiffs' Policy

### A.    The Insurance Policy at Issue

Cincinnati issued Policy No. ECP 025 60 06 to Plaintiffs Adam Joel Myers DS, PLLC d/b/a Pineview Dental Care, for a policy period of July 1, 2017 to July 1, 2020. (Ex. A, Policy, p. 1).[1] Cincinnati issued the Policy to Plaintiff in West Virginia.  The Policy insures Plaintiffs' premises in Morgantown, West Virginia. (Policy, p. 5; *and see* Compl. at ¶ 26).

The pertinent forms are the Building and Personal Property Coverage Form, Form FM 101 05 16 and the Business Income (and Extra Expense) Coverage Form, Form FA 213 05 16 (Policy, pp. 22-61 & 113-121, respectively). The Building and Personal Property Coverage form, FM 101 05 16 is the main property coverage form. The Business Income (and Extra Expense) Coverage form, FA 213 05 16 addresses business income and extra expense. Using the same language, Forms FM 101 and FA 213 supply Business Income and Extra Expense Coverage, but only if the necessary elements for coverage are satisfied. Both forms also contain the Civil Authority coverages at issue in the Complaint.

### B.    The Policy's Direct Physical Loss Requirement

The requirement of "direct physical loss" is a core element in property insurance policies like Plaintiffs', and appears in multiple places in the policy. For example, direct physical loss to

---

[1] The Policy is attached as Exhibit A to and referred to herein as "Policy." Courts may consider documents outside the complaint without converting a motion to dismiss into one for summary judgment.  *Goldfarb v. Mayor & City Counsel of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).  This includes documents that were not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute as to its authenticity.  *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 166 (4th Cir. 2016).

the Plaintiffs' property is required for Business Income coverage as outlined in the Building and Personal Property Coverage:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by ***direct*** "loss" ***to*** property at a "premises" caused by or resulting from any Covered Cause of Loss.

(Policy p. 39)(emphasis added). The Policy's Business Income and Extra Expense Coverage form provides to the same effect. (Policy, p. 113) (emphasis added). Covered Causes of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (Policy, pp. 26 & 114); "Loss" is defined as "accidental ***physical*** loss or accidental ***physical*** damage." (Policy, pp. 59 & 121) (emphasis added). Accordingly, there is no Covered Cause of Loss unless the insured first establishes, among other things, that there is direct physical loss **to** covered property.

A Covered Cause of Loss, and thus direct physical loss, is an express requirement for any coverage under the Policy, including the Extra Expense and Civil Authority coverages. (Policy, pp. 39 & 114 (Extra Expense); pp. 40 & 114 (Civil Authority)).[2] Likewise the Policy's Extended Business Income coverage does not apply unless the insured first sustains a "'Business Income' or 'Extra Expense' 'loss' payable under [the Policy]." (Policy, pp. 39 & 115). Thus, direct physical loss is also required for Extended Business Income coverage.

Furthermore, while the definition of Covered Cause of Loss refers to exclusions, exclusions do not come into play unless there is first direct physical loss. *See Allied World Surplus Lines Insurance Company v. Day Surgery Limited Liability Company,* ---F.Supp. 3d---, 2020 WL 1545881,\* 3 (S.D W.Va. March 31, 2020) *citing to Runion v. Minnesota Life Ins. Co.,* 213 WL

---

[2] Plaintiffs allege that as a result of Governor Jim Justice's March 31, 2020 Executive Order they were precluded access to their business premises. (Compl. at ¶ 9). However, the Complaint does not appear to seek Ingress and Egress coverage under the Policy. (*See* Ex. A at pp. 116). Even if it did, such coverage also requires a Covered Cause of Loss, *i.e.*, direct physical loss, and, as such, would not apply.

*2458541, \*2 (S.D. W.Va. June 6, 2013)* ("Thus, in cases involving a determination of the scope of coverage, the insured 'bears the burden of establishing a prima facie case that the claim falls within the scope of coverage. Once a prima facie case has been established, the burden shifts to the insurer to demonstrate that an exclusion applies'.")

   **C. Additional Requirements for Coverage Under the Policy**

  Among the requirements for Civil Authority coverage is the requirement of direct physical loss to property other than property at the insured's premises. Additionally, there must be a prohibition of access to the insured's premises.[3] (Policy, pp. 40 & 114).

## ARGUMENT

**I. Motion to Dismiss Standard**

  Dismissal is an appropriate mechanism here because this motion presents a pure question of law. A motion to dismiss for failure to state a claim should prevail if, after the complaint's allegations are taken as true and all reasonable inferences are made in favor of the nonmoving party, the nonmoving party cannot prove facts supporting its claim. *Giarratano v Johnson,* 521 F. 3d 298, 302 (4th Cir. 2008). *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter to show that the claim for relief is "plausible on its face." *Robertson v. Sea Pines Real Estate Co.,* 679 F.3d 278, 288 (4th Cir. 2012); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plausibility standard is not a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v Twombly,* 550 U.S. 544, 556 (2007). A claim does not meet the

---

[3] There are other requirements for Civil Authority coverage that Cincinnati does not rely on for this Motion. However, Cincinnati does not waive the right to raise those requirements at a later time.

plausibility standard unless it includes enough factual content to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Importantly, legal conclusions and other unsupported conclusions stated in the Complaint may not be considered in determining a motion to dismiss. *See, e.g., Iqbal,* 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); "Courts are likewise not required to consider 'unwarranted inferences, unreasonable conclusions or arguments.'" *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009). Furthermore, documents extrinsic to the Complaint may be considered if they are "integral to and explicitly relied on in the complaint" and if there is no dispute as to their authenticity. *Robinson v. Am. Honda Motor Co*, 551 F.3d 218, 222-23 (4th Cir. 2009); *Tinsley v. OneWest Bank, FSB*, 4 F.Supp.3d 805, 819 (S.D.W.Va., 2014). A court is not limited to the factual allegations in the complaint when considering a motion to dismiss but "may properly take judicial notice of matters of public record" without converting the motion into on for summary judgment. *Lydick v. Erie Insurance Property & Casualty Company*, 358 F.Supp.3d 552, 557 (S.D.W.Va., 2019) citing *to Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Courts may also feel free to consider documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Id*.

As noted, the Policy is explicitly referred to in the Complaint. (Compl. at ¶ 11). The Orders cited in the Complaint are matters of public record.

Here, the Complaint's allegations are in conflict with the terms of the Policy and the Orders. This means that the Policy and the Orders control. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) ("In the event of conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,]

. . . the exhibit prevails.") *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 & n. 22 (4th ed.) (Wright & Miller) ("It appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.") (collecting cases).

Indeed, dismissal for failure to state a claim is appropriate where, as here, the plain and unambiguous language of the parties' contract shows the plaintiff cannot "plausibly allege" its contradictory interpretation. A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Giarratano*, 521 F.3d at 302, *citing to Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *See also*, *Paterno v. Wells Fargo Ins. Services, Inc.¸*2013 WL 1187932, at *4 (S.D.W.Va., 2013) ("Where the plain language of a contract contradicts the allegations of the plaintiff's complaint, dismissal of the claims is proper.") *citing to Wellington Power Corp. v. CNA Surety Corp.*, 614 S.E.2d 680, 685-86 (W.Va. 2005); *Canales v. Dan Ryan Builders, Inc.*, 2005 WL 2205349, at *2-3 (N.D.W.Va., 2005).

In this context, any amendment of the complaint would be futile since the Plaintiffs are unable to state a viable claim in light of the controlling contract terms. Leave to amend should be denied as futile when the proposed amendment is clearly insufficient or frivolous on its face. A proposed amendment is futile 'if ... [it] fails to satisfy the requirements of the federal rules, "such as Rule 12(b)(6)." *Friend v. Remac Am., Inc.,* 924 F.Supp.2d 692, 696 (N.D.W.Va.2013) (citations omitted).

**II.    There is No Direct Physical Loss and Therefore No Coverage**

As shown, the Policy only provides coverage where there is direct physical loss. But, the

Complaint does not allege facts showing any direct physical loss to any property. The mere presence of the virus on a premises does not constitute direct physical loss. But even assuming that it did, Plaintiffs do not even allege the virus was present at their premises. Rather, they summarily, and incorrectly, allege that as a result of the "risks associated with COVID-19 and/or due to Governor Jim Justice's March 31, 2020 Executive Order, Plaintiffs were forced to shut down their business, were precluded access to the business premises and were forbidden from performing dental services". (*See, e.g.*, Compl. at ¶¶ 8-9)[4]. As such, Plaintiffs cannot possibly prove their claim.

> A. **There Are No Facts to Show Plaintiffs' Property was Physically Altered, thus there is No Direct Physical Loss**

Plaintiffs ask the Court to create coverage where there is none. This is not allowed. In West Virginia, the language in an insurance policy should be given its plain, ordinary meaning. *Soliva v. Shand, Morahan & Co., Inc.*, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (1987). Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended. *Keffer v. Prudential Ins. Co.*, 172 S.E.2d 714 (1970); *Allstate Ins. Co. v. Ashley*, 1994 WL 580090, at *2 (4th Cir. 1994) (interpreting West Virginia law); *American National Property and Casualty Company v. Clendenen*, 2016 WL 844826, at *7 (N.D.W.Va., 2016) (interpreting West Virginia law).

No case, in West Virginia or elsewhere, has held that the existence of a virus constitutes direct physical loss to property such as buildings. Moreover, even if the Coronavirus could cause

---

[4] Contrary to Plaintiffs' allegations, Governor Jim Justice's March 31, 2020 Order did not preclude access to any premises, did not require any business to shut down and did not forbid any provider from performing all dental services. It only limited the type of medical services that could be provided. Indeed, pursuant to the March 31, 2020 Order, Plaintiffs could still access their premises and could perform non-elective procedures. See https://governor.wv.gov/Documents/EO%2016-20electiveprocedures.pdf.

direct physical loss to property, which it cannot, the only loss alleged here is not physical loss to property, but a purely financial loss. (Compl. at ¶¶ 9-10). As such, Plaintiffs cannot plausibly argue that the virus or the Orders caused any physical alteration to their property that could trigger coverage.

### 1. There is No West Virginia Authority That Allows Coverage for Financial Losses Without Damage or Alteration to Property.

Financial losses unrelated to physical loss or physical damage at the insured premises do not satisfy the Policy's direct physical loss requirement. Here, Plaintiffs' factual allegations show there was no direct physical loss to their property. Plaintiffs allege that they sustained financial losses because of the Orders and the "risk associated with COVID-19" (*See, e.g.,* Compl. at ¶¶9-10). But, like the virus, the Orders did not physically alter any property. Rather, the Complaint alleges, the Orders caused the Plaintiffs to sustain "a substantial loss of business income and incurred extra expenses that they would not have otherwise incurred." (Compl. at ¶ 10).

In essence, Plaintiffs assert that the Policy's direct physical loss requirement is met whenever a business suffers economic harm. This is contrary to a host of cases holding that direct physical loss requires actual, tangible, permanent, physical alteration of property, as discussed below.

### 2. Prevailing Law Nationally

The prevailing law across the United States requires that an insured show demonstrable physical alteration of property. . *See, e.g.*, 10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, ***is widely held*** to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (Emphasis added) (collecting cases);

*see also Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.,* 465 F.3d 834 (8th Cir. 2006) (applying Minnesota law); *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co*., 400 F.3d 613 (8th Cir. 2005) (applying Minnesota law); *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 978-979 & n. 4 (D. Kan. 2016) (applying Kansas law) (the phrase "physical loss or damage" "***unambiguously***" requires "***physical alteration***" of property) (emphasis added); *N.E. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) (applying Georgia law) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Companies*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *3 (S.D. Miss. Nov. 19, 2007) ("Plaintiff's interpretation of the [insurance] contract would render the words 'direct' and 'physical' meaningless in the context of the policy.") (collecting cases); *Mastellone*, 2008-Ohio-311, ¶ 68, 175 Ohio App. 3d 23, 884 N.E. 2d 1130, 1144 (2008) (no direct physical loss because mold could be removed via cleaning, and its presence did not alter or otherwise affect the structural integrity of the siding), *citing* 10A *Couch on Ins.* § 148:46 (3d Ed.1998);s*ee, e.g., Gavrilides Management Company et al. vs. Michigan Insurance Company*, Case No. 20-258-CB-C30 (July 2, 2020, Ingham County, MI) ("Direct physical loss of or damage to the property "has to be something with material existence. Something that is tangible. Something . . . that alters the physical integrity of property."); *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at pp. 5 & 15 (the Coronavirus damages lungs; not printing presses) *see also, Rose's 1, LLC et al. v. Erie Insurance Exchange*, Civ. Case No. 2020 CA 002424B, (D.C. Sup. Ct . August 6, 2020).

*Source Food Tech., Inc.* is a seminal case concerning the direct physical loss requirement. There, an embargo on the importation of Canadian beef due to mad cow disease prevented a truck carrying the insured's beef product, which was not itself contaminated, from crossing the border. *Source Food Tech., Inc.,* 465 F.3d at 835. As a result, the insured sustained significant financial losses because it could not fill its customers' orders. *Id*.

Source Food claimed lost business income under its insurance policy. That policy, like the Policy here, covered the suspension of business operations "caused by *direct physical loss to Property*". *Id*. (Emphasis in original). Source Food argued "that the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were physically contaminated by mad cow disease and lost its function." *Id*. at 836. *Source Food* rejects this argument: "To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Id.* at 838.

*Pentair* is to the same effect. *Pentair* rejects the insured's contention that its Taiwanese suppliers' inability to function after a loss of power caused by an earthquake constituted direct physical loss or damage. *Pentair, Inc.*, 400 F.3d at 616. *Pentair* holds that loss of use or function can be relevant to determining the amount of loss, *but only once the insured first establishes physical loss or damage*. *Id*. ("Pentair's argument, if adopted, would mean that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose.") (Emphasis in original).

*Philadelphia Parking Authority v. Fed. Ins. Co.,* 385 F. Supp. 2d 280 (S.D.N.Y. 2005) (applying Pennsylvania law), also supports a dismissal here. There, the plaintiff operated a parking garage at the Philadelphia International Airport. *Philadelphia Parking Auth.*, 385 F. Supp. 2d at

281. Since its garage depended on the airport to attract customers, it sustained a significant loss of business when the FAA grounded all flights in the United States following the 9/11 terrorist attacks. *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 282-283. Plaintiff sought business income, extra expense, and civil authority coverage under its property insurance policy.

The business income, extra expense, and civil authority coverage provisions in *Philadelphia Parking Authority* were substantially similar to those in the Policy here. Philadelphia Parking Authority's business income coverage applied to the insured's loss of income during the "period of indemnity" in the event of an actual interruption of the insured's business, provided that the "actual interruption of [Philadelphia Parking Authority's] operations [was] caused by ***direct physical loss or damage*** caused by a covered cause of loss . . . ." *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 282 (emphasis added). Similarly, the civil authority coverage only applied in the event "a civil authority ***prohibits*** access to [Philadelphia Parking Authority's] covered property because of ***direct physical loss or damage*** caused by a covered cause of loss to property not otherwise excluded in the vicinity of [Philadelphia Parking Authority's] covered property." *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 282 (emphasis added).

*Philadelphia Parking Authority* holds that these provisions unambiguously require that "a 'covered cause of loss' . . . result in some 'direct physical loss or damage,' which in turn must interrupt the insured's business operations." And, "***the claimed loss or damage must be physical in nature***." *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 288 (emphasis added). *Philadelphia Parking Authority* dismisses the complaint because it did not allege any physical loss or damage to the parking garage or other property in its vicinity. *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 287. As such, the claim "clearly [did] not fit the plain language of the Business Income Provision." *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 287.

*Philadelphia Parking Auth., Source Food* and *Pentair* are well-reasoned cases and should be followed. Moreover, there are no material differences among Minnesota's, Pennsylvania's and West Virginia's respective decisions on pertinent insurance law issues. These states seek to apply the plain meaning of an insurance policy. *Soliva v. Shand, Morahan & Co., Inc.*, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (1987); *Keffer v. Prudential Ins. Co.*, 172 S.E.2d 714 (1970); *Reeves v. Travelers Companies*, 296 F. Supp. 3d at 691, *citing Clarke*, 100 A.3d at 275 (Pa. Super. Ct. 2014); *Allstate Ins. Co. v. Ashley*, 1994 WL 580090, at *2 (4th Cir. 1994) (interpreting West Virginia law); *American National Property and Casualty Company v. Clendenen*, 2016 WL 844826, at *7 (N.D.W.Va., 2016) (interpreting West Virginia law) *accord, Depositors Ins. Co. v. Dollansky,* 905 N.W.2d 513, 515 (Minn. Ct. App. 2017), *aff'd*, 919 N.W.2d 684 (Minn. 2018). As such, it is appropriate for this Court to follow the sound construction and application of the "direct physical loss" requirement stated in so many cases, including *Source Food*, and *Pentair*.

Further, emerging decisions concerning recent claims similar to Plaintiffs' show that there is no physical loss or physical damage as required for coverage under similarly worded policies. They hold that the Coronavirus and related closure orders do ***not*** cause "physical," i.e., actual, tangible, structural, loss or damage to property. *See, e.g., Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B, slip op. at pp. 7-9 (D.C. Superior Aug. 6, 2020)(the weight of the case law was that there is no coverage when a business's closure was not due to direct physical harm to the insured premises); *Gavrilides Management Company et al. vs. Michigan Insurance Company*, Case No. 20-258-CB-C30 (July 2, 2020, Ingham County) ("Direct physical loss of or damage to the property "has to be something with material existence. Something that is tangible. Something . . . that alters the physical integrity of property."); *Social Life Magazine, Inc. v. Sentinel Ins. Co.,*

*Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at pp. 5 & 15 (the Coronavirus damages lungs; not printing presses).[5]

Here, as in the precedents Cincinnati relies on, there was no direct physical loss to Plaintiffs' property. Plaintiffs do not allege that the Coronavirus physically altered their property. There is no assertion of anything that resembles a distinct, demonstrable, physical alteration of the property. Indeed, even at premises where (unlike Plaintiffs' premises) the virus has been confirmed to be present, such as hospitals and nursing homes, the buildings have remained open. This is because those buildings and properties are themselves undamaged.

The financial losses Plaintiffs assert do not constitute direct physical loss. Thus, there can be no Business Income or Extra Expense coverage here.

**B.     Coronavirus Does Not Affect the Structural Integrity of Property Because it Can Be Removed by Cleaning**

There is no direct physical loss in situations where a contaminant or substance can be cleaned. *See*, *e.g.*, *Mastellone*, 2008-Ohio-311, ¶ 68 (no direct physical loss because mold could be removed via cleaning, and its presence did not alter or otherwise affect the structural integrity of the siding), *citing* 10A *Couch on Ins.* § 148:46 (3d Ed.1998); *Mama Jo's, Inc. v. Sparta Ins. Co.,* 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[W]ith regards to Plaintiff's initial claim for cleaning, cleaning is not considered direct physical loss."); *Universal Image Prods., Inc. v.*

---

[5] A copy of the *Rose's 1* decision is attached as Ex. B. No written opinions have been issued in *Gavrilides Management Company* and *Social Life* at the time of filing this brief. The oral arguments and the Court's oral ruling in *Gavrilides* are available for viewing on YouTube: https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be. A copy of the hearing transcript and related Order are also attached for the Court's convenience as Exhibit C. A copy of the hearing transcript in *Social Life* is available through the Federal Court's filing system, PACER, and is attached for the Court's convenience as Exhibit D.

*Chubb Corp.*, 703 F.Supp.2d at 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 Fed.Appx. 569 (6th Cir. 2012).

The Centers for Disease Control and Prevention (CDC) instruct that the Coronavirus can be wiped off surfaces by cleaning: "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." (*See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020), attached as Exhibit B; *See also* CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (accessed July 22, 2020)).[6]

Plaintiffs seem to suggest that their temporary loss *of use* of their property for elective procedures is direct physical loss because they suffered "'accidental physical loss' *of their* Covered Property…" (Compl. at ¶¶ 29-30) (emphasis added). Plaintiffs blatantly misstate the Policy's coverage. The plain language of the Policy requires direct *physical* loss *to* property or direct *physical* damage *to* property. As established above, the Policy language itself controls here, not a pleader's misstatement or characterization of that language. Plaintiffs also disregard that the myriad of cases addressing the issue consider, and reject, loss *of use* as equivalent to the direct *physical loss* (or direct physical damage) *to* property. (*See* Policy at pp. 39-40 & 113-114). Instead, the focus of the courts' analysis is on the Policy's requirement that the loss or damage must be "direct" and "physical". *See* Section II.A & B., *infra*.

Thus, even where the Coronavirus is or was actually present, there is no direct physical loss because the virus either dies naturally in a short time, or it can be wiped away.

---

[6] Again, this Court may take judicial notice of the CDC reports and other matters of public record without converting Cincinnati's motion to dismiss to a motion for summary judgment. *See, e.g., Lydick* at 557.

### III. There Is No Civil Authority Coverage

As established, the Policy's Civil Authority coverage only applies if there is a Covered Cause of Loss, meaning direct physical loss that is not excluded or limited, to property other than the Plaintiffs' property. Even then, there is only Civil Authority coverage if, among other things, the action of the civil authority prohibits access to the insured premises. (Policy, pp. 40 & 114). "[L]osses due to curfew and other such restrictions are not generally recoverable. * * * If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A *Couch on Ins.* § 167:15.

#### A. There is No Direct Physical Loss to Other Property

Cincinnati has demonstrated that direct physical loss to property other than the Plaintiffs' property is necessary. Courts nationwide have upheld that requirement. *See, e.g., Philadelphia Parking Auth.*, 385 F. Supp. 2d at 289 (applying Pennsylvania law); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, 8 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.,* 2011 WL 13214381, 6 (E.D. Tex. Mar. 30, 2011); *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, 10 (S.D. Tex. Feb. 15, 2008); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006).

Just as the Coronavirus is not causing direct physical loss to the Plaintiffs' premises, it is not causing direct physical loss to other property. Plaintiffs fail to identify any distinct, demonstrable, physical alteration of property, anywhere. Rather, they allege the Orders have required Plaintiffs to temporarily cease providing "elective" dental procedures. (*See, e.g.*, Compl.

at ¶¶ 8-10). No facts are alleged that demonstrate that these things happened because of direct physical loss to anybody's property.

There are no alleged facts asserting any direct physical loss. There are no alleged facts showing any change or alteration of anybody's physical property by the Coronavirus or the Closure Orders. There are, however, facts showing that the Coronavirus can be removed via cleaning. As established, this is the marker of something that is *not* direct physical loss. Accordingly, there is no direct physical loss to any other property as is required for Civil Authority coverage.

### B.     The Requisite Prohibition of Access Is Lacking

The Civil Authority coverage also requires that access to Plaintiffs' premises be *prohibited* by an order of civil authority. But, the Plaintiffs do not allege the Orders prohibited access to their premises. Nor could they. Under the Orders, non-essential businesses, including Plaintiffs' business, remained open and accessible to owners, employees and others so that they could continue to operate.[7] Furthermore, the Closure Orders expressly permitted dental offices like Plaintiff's to remain open to customers for urgent, emergency and other non-elective procedures. (Compl. at ¶¶ 7-8). Because there was no prohibition of access, there is no Civil Authority coverage.

The prohibition of access requirement is pervasive and has been enforced nationally. As discussed, the insured parking garage owner in *Philadelphia Parking* failed to show the FAA's order grounding flights after 9/11 prohibited access to its premises, as required for civil authority coverage under Pennsylvania law. Likewise, in *Ski Shawnee, Inc. v. Commonwealth Ins. Co.,* 2010 WL 2696782, 4 (M.D. Pa. July 6, 2010), a bridge repair hindered or dissuaded the majority of customers from visiting a ski resort., but did not constitute prohibition of access to the premises.

---

[7] https://governor.wv.gov/Documents/EO%2016-20electiveprocedures.pdf;   *see   also,*   https://coronavirus-wvgovstatus-cdn.azureedge.net/STAY_AT_HOME_ORDER.pdf, p. 4.

To the same effect is *Southern Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004) (applying Oklahoma law) (access to hotels was not prohibited by FAA order grounding flights in response to 9/11 attacks). *See also*, *e.g.*, *Syufy Enterprises v. Home Ins. Co. of Indiana*, 1995 WL 129229, 2 (N.D. Cal. Mar. 21, 1995) (riot-related curfew prevented insured's customers from being out and about, it did not prohibit access to the insured's premises); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.,* 268 A.2d 611, 614 (D.C. 1970) (same); *Schultz Furriers, Inc. v Travelers Cas. Ins. Co. of America*, 2015 WL 13547667, 6 (N.J. Super. L. July 24, 2015) (despite serious traffic issues in lower Manhattan following Superstorm Sandy, it was not completely impossible for the public to access the insured store). *See also, Goldstein v Trumbull Ins. Co.*, 2016 WL 1324197, 12 (N.Y. Sup. Ct. Apr. 05, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, 4 (Minn. Ct. App. June 7, 2005).

Because the Complaint's allegations establish access was not prohibited, the Civil Authority coverage does not apply.

### IV.   Conclusion

For the reasons established above, Cincinnati's Motion to Dismiss should be granted.

**August 10, 2020**

          Respectfully submitted,

          /s/ *Trisha A. Gill*
          Trisha A. Gill, Esquire
          W.Va. ID #12463
          Litchfield Cavo LLP
          Two Gateway Center
          603 Stanwix Street, 10th Floor
          Pittsburgh, PA 15222
          (412) 291-8240
          gill@litchfieldcavo.com

          Counsel for Defendants

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing *Memorandum of Law in Support of Motion to Dismiss* has been served via the CM/ECF filing system and to all counsel of record this, 10th day of August, 2020.

Scott S. Blass, Esquire
Bordas and Bordas
1356 National Road
Wheeling, WV, 26003
*Counsel for Plaintiff*
*sblass@bordaslaw.com*

        Respectfully submitted,

        LITCHFIELD CAVO LLP


        By  */s/Trisha A. Gill*
        Trisha A. Gill, Esquire (WV ID #12463)
        603 Stanwix St.
        Two Gateway Center 10th Floor
        Pittsburgh, PA 15221
        412-291-8240
        gill@litchfieldcavo.com

        *Counsel for Defendant, Cincinnati Insurance Company*

.